THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ADELL JONES, Defendant-Appellant.

First District (4th Division)   No. 1—99—3492

Opinion filed May 10, 2001.

Michael J. Pelletier and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Annette Collins, Alan J. Spellberg, and Karin V. Pettit, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SOUTH delivered the opinion of the court:

On November 18, 1997, the grand jury indicted defendant Adell Jones on three counts of first degree murder, three counts of aggravated kidnaping, and one count each of arson, concealment of homicidal death, aggravated vehicular hijacking, vehicular hijacking, and burglary. Prior to the bench trial on June 7, 1999, the State dropped the aggravated kidnaping, arson, concealment of homicidal death, vehicular hijacking, and burglary charges. The court convicted defendant on three counts of first degree murder and the aggravated vehicular hijacking count. On July 13, 1999, the trial court sentenced

defendant to natural life for the murder charge plus 30 years for the hijacking charge to run concurrently. Defendant filed a motion for reconsideration on July 28, 1999, which the court denied on September 16, 1999.

Defendant raises two issues on appeal: (1) whether he was denied effective assistance of counsel; and (2) whether *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), requires the reversal of his sentence where the circuit court imposed a sentence of natural life imprisonment for first degree murder.

At approximately 4 a.m. on October 18, 1997, defendant drove his brother's Lincoln Continental, along with his passenger Leroy Smythe, to a Shell gas station located at 147th Street and Sibley Boulevard. The two had followed another vehicle to the gas station in an attempt to obtain the telephone numbers of two ladies inside the car. Once at the gas station, defendant noticed two men standing by the telephone and a woman with blonde hair standing by her van, which was beside another vehicle. Defendant parked his brother's car and walked over to the vehicle he had been following. The passenger of that car got out of the vehicle, and defendant got into the car and obtained the driver's telephone number. Defendant then left the vehicle and walked past the telephones on his way to his brother's vehicle. At that point, the woman with the blonde hair stopped defendant and asked him to tell a gentleman from the vehicle parked next to her van to stop harassing her. Defendant did so, and the gentleman left. Defendant then noticed his brother's vehicle and the vehicle with the two women he had been following drive off. Defendant ran after the vehicles and fired a shot from his .25 Winchester at them.

With his gun in hand, defendant ran back to the woman with blonde hair and her van and told her to move over so that he could drive her car in order to pursue his brother's stolen vehicle. Defendant and Smythe got in the van and drove after his brother's car. Defendant placed the gun between his legs. The woman was screaming and struggling with defendant during this pursuit. After five minutes, defendant lost sight of the vehicles. Defendant turned the vehicle around and began driving toward his cousin Sylvania Polk's home on South Exchange Avenue in Chicago. The woman continued to struggle with defendant, and he hit her with his gun, which discharged and struck her in the face, although it did not kill her. Defendant arrived at his cousin's home, left the woman and Smythe in the van, spoke with his cousin, and called his fianceé. Defendant returned to the van, placed the woman in a head lock, and shot her several times in the head.

Defendant and Smythe drove the van to 86th Street and Ingleside

and walked a few blocks to Smythe's home. Defendant left the gun with Smythe and went home, where he told his brother what occurred. Defendant's brother later burned the van, and his brother's wife retrieved the gun from Smythe.

At approximately 6:40 a.m. that same day, Chicago police officer Pizana and his partner Mike O'Malley were stopped by a garbage man who informed them of a body in an alley on South Commercial Street. Officer Pizana found the body lying facedown and noticed injuries to the victim's head and casings from a .25-caliber automatic weapon.

On October 19, 1997, Chicago police officer Allen Falasz, a bomb and arson detective, investigated a fire at 8748 S. Dauphine Street. Falasz testified that the fire originated in the rear of the van and was caused by a flammable liquid ignited with an open flame. The vehicle was registered to the victim and her husband.

The parties stipulated that Donna M. Hunsaker, an expert in the field of forensic pathology and doctor for the Cook County medical examiner's office, if called to testify, would state that the victim was shot five times, with one wound to the upper lip and mouth, two wounds to the left temple, one wound to the vortex of the head, and a wound to the back of the neck. According to Hunsaker, who conducted the autopsy, the victim died of multiple gunshot wounds.

The parties also stipulated that Chicago police officer W. O'Connor, a forensic investigator, recovered four Winchester .25-caliber cartridge casings from the homicide scene and Chicago police officer S. Majewski, also a forensic investigator, recovered one .25-caliber cartridge from the van floor. They further stipulated that Beth A. Patty, an expert in firearm comparison and identification employed by the Illinois State Police Forensic Science Center, would testify that the five bullets were all fired from the same Winchester .25-caliber automatic weapon. They also stipulated that Polk would testify that defendant told her that he shot the victim in the face but that she was still alive at that time. According to Polk, she told defendant to take the victim to the hospital.

After finding defendant guilty of first degree murder and aggravated vehicular hijacking, the court found defendant eligible for the death sentence but later declined to impose death due to sufficient mitigating factors. The court sentenced defendant to natural life for murder and a concurrent 30-year sentence for aggravated vehicular hijacking.

The first issue raised is whether defendant was denied effective assistance of counsel. Claims of ineffective assistance of counsel based on deficient representation of a criminal defendant are evaluated in accordance with the two-prong test set forth in *Strickland v. Washing-*

*ton*, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984), and adopted by Illinois courts in *People v. Albanese*, 104 Ill. 2d 504, 526, 473 N.E.2d 1246, 1256 (1984). Under *Strickland*, defendant must demonstrate that (1) his counsel's performance fell below an objective standard of reasonableness; and that (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Shatner*, 174 Ill. 2d 133, 144, 673 N.E.2d 258, 263 (1996), citing *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. As to the first prong, judicial scrutiny of counsel's performance is highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *People v. Pecoraro*, 175 Ill. 2d 294, 319-20, 677 N.E.2d 875, 887-88 (1997), citing *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.

■ A court need not consider whether counsel's performance was deficient prior to examining the prejudice that defendant suffered as a result of the alleged deficiency. If the ineffective assistance claim can be disposed of on the ground that defendant did not suffer prejudice, the court need not decide whether counsel's performance was constitutionally deficient. *People v. Bull*, 185 Ill. 2d 179, 203, 705 N.E.2d 824, 836 (1998). To establish prejudice, defendant must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Bull*, 185 Ill. 2d at 203, 705 N.E.2d at 836.

Defendant argues that because his counsel was ineffective, the resulting convictions for first degree murder and aggravated vehicular hijacking must be reversed and this cause remanded for a new trial. Defendant claims that inasmuch as his counsel failed to subject the State's case to meaningful adversarial testing, ineffective assistance of counsel can be presumed without application of the *Strickland* test. Defendant suggests instead the court's application of *People v. Hattery*, 109 Ill. 2d 449, 488 N.E.2d 513 (1985), to his case.

The State responds that defense counsel tested the State's case and his decisions were a matter of trial strategy. According to the State, even if defense counsel provided ineffective assistance of counsel, defendant was not prejudiced as a result of his attorney's performance. The State argues that defendant has failed to establish that the analysis in *Hattery* should apply to defendant's claim of ineffective assistance of counsel where defense counsel's actions are distinguish-

able from counsel's actions in *Hattery*. The State argues instead that the *Strickland* test should apply.

■ In a narrow range of cases, a defendant complaining of the ineffective assistance of counsel need not demonstrate that he suffered actual prejudice from counsel's deficient performance. *People v. Barfield*, 187 Ill. App. 3d 190, 198, 543 N.E.2d 812, 816 (1989), citing *Strickland*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *Hattery*, 109 Ill. 2d at 461, 488 N.E.2d at 517. The sixth amendment requires, at a bare minimum, that defense counsel act as a true advocate for the accused. Where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of sixth amendment rights that makes the adversary process itself presumptively unreliable. *Barfield*, 187 Ill. App. 3d at 198, 543 N.E.2d at 816, citing *United States v. Cronic*, 466 U.S. 648, 659, 80 L. Ed. 2d 657, 668, 104 S. Ct. 2039, 2047 (1984); *Hattery*, 109 Ill. 2d at 461, 488 N.E.2d at 517.

The court in *Hattery* held that defense counsel's trial strategy of admitting that defendant was guilty of murder and stating that the only issue for the jury to decide was whether the defendant was eligible for the death penalty was totally at odds with defendant's plea of not guilty. The court held that defense counsel's actions deprived defendant of the right of having the issue of his guilt or innocence presented to the jury as an adversarial issue. The prosecution's case was not subjected to the "meaningful adversarial testing" required by the sixth amendment. *Hattery*, 109 Ill. 2d at 464, 488 N.E.2d at 519.

■ We agree with the State and will apply *Strickland*'s two-prong test in reviewing defendant's ineffective assistance of counsel claim. Unlike *Hattery*, defense counsel in the instant matter, although arguing in his opening statement that no attempt would be made to excuse defendant's actions, argued that defendant should not be convicted of aggravated vehicular hijacking and felony murder, filed pretrial, trial and posttrial motions, presented an opening and closing statement, cross-examined witnesses, and argued motions. Defense counsel subjected the prosecution's case to meaningful adversarial testing. See *People v. Johnson*, 128 Ill. 2d 253, 538 N.E.2d 1118 (1989); *Barfield*, 187 Ill. App. 3d 190, 543 N.E.2d 812; *Shatner*, 174 Ill. 2d 133, 673 N.E.2d 258; *People v. Stone*, 274 Ill. App. 3d 94, 653 N.E.2d 1311 (1995).

In *People v. Johnson*, 128 Ill. 2d 253, 538 N.E.2d 1118 (1989), defendant was convicted of intentional murder, knowing murder, felony murder, attempted murder, armed violence, aggravated battery, armed robbery, theft, and unlawful restraint. He appealed in part on the basis that defense counsel was ineffective. Defense counsel admitted

that defendant killed a victim, shot the other victims and took personal property. The court found, however, that with two surviving victims able to testify, along with defendant's confession, the evidence was overwhelming. The court found that although defense counsel conceded murder, by not entering a guilty plea counsel did not concede each element of attempted murder, felony murder, armed violence, aggravated battery, armed robbery, theft and unlawful restraint. Rather, counsel argued that the State must meet its burden of proof beyond a reasonable doubt. *Johnson*, 128 Ill. 2d at 270, 538 N.E.2d at 1125.

In *People v. Shatner*, 174 Ill. 2d 133, 673 N.E.2d 258 (1996), defendant was convicted of first degree murder, armed robbery, and arson, and the appellate court affirmed that decision. He appealed, arguing that while his defense theory was appropriate to rebut the counts of intentional murder and knowing murder, his counsel was ineffective in conceding that defendant participated in a robbery during which the victim was killed, thus admitting to felony murder. Defendant argued that his counsel wholly failed to subject the State's case to meaningful adversarial testing and, thus, ineffective assistance of counsel could be presumed without the application of the *Strickland* test. The appellate court held that inasmuch as defense counsel presented both opening and closing arguments, cross-examined virtually all of the State's witnesses, presented several witnesses, objected to the admission of adverse evidence, and moved for a mistrial, defense counsel subjected the State's case to meaningful adversarial testing. The court held:

> "Ultimately, it was the defendant's own statements, both to the FBI and on the witness stand, and not the actions or strategy of his counsel, which undermined any claim of innocence that defendant may have had. If a defendant enters a not-guilty plea in the face of overwhelming evidence of his guilt, we are unwilling to find that his counsel was ineffective simply because he failed to contrive a leak-proof theory of innocence on defendant's behalf. To do so would effectively require defense attorneys to engage in fabrication or subterfuge." *Shatner*, 174 Ill. 2d at 148, 673 N.E.2d at 264.

The court noted that defense counsel's strategy of attempting to convince the jury that defendant's minimal involvement in the scheme warranted either a finding of innocence or a conviction for robbery only was risky, but strategy nevertheless. The court held that, under the circumstances of the case, defense counsel's performance was not deficient with respect to his proffered defense theory. *Shatner*, 174 Ill. 2d at 148, 673 N.E.2d at 265.

In the instant case, defendant spoke with Assistant State's Attorney Syregelas after having been informed by Syregelas that he was

a prosecutor, not defendant's attorney, and advised of his *Miranda* rights. Defendant waived his constitutional rights, admitted what he had done, and memorialized his statement to a court reporter in the presence of Syregelas and Chicago police officer Brownfield. Defendant admitted that he told the victim, with his gun in hand, to move over and allow him to drive her van after his brother's stolen vehicle. He stated that while he was chasing the cars, the victim was crying and screaming for her life and striking him. He admitted hitting her with the gun, which discharged but did not kill her. He stated that later he did kill her behind his cousin's house by shooting her in the head. "In situations where there is overwhelming evidence of guilt and no defense, if counsel contests all charges he is liable to lose credibility with the trier of fact when it comes to charges where a legitimate defense exists." *Johnson*, 128 Ill. 2d at 270, 538 N.E.2d at 1125.

Applying the *Strickland* test, this court finds that it is not reasonably probable that but for defense counsel's alleged errors the results of these proceedings would have been different.

Defendant argues that his counsel was ineffective for failing to file pretrial motions challenging both the voluntariness of his statement and the legality of his initial arrest.

The State responds that defendant's statement was freely and voluntarily given and that a motion to suppress would have been futile inasmuch as defendant was fully advised of his constitutional rights prior to giving his statement and admitted that the police had treated him well. The State argues that defendant has failed to establish that there was a reasonable probability that the circuit court would have granted a motion to suppress defendant's statement and that a motion to quash his arrest would have been successful.

Defendant stated that his counsel failed to present a legal theory of defense in his opening statement and there was no excuse for defendant's actions, which defendant argues was an admission of guilt. Defendant also claims that his counsel provided ineffective assistance inasmuch as he failed to conduct meaningful cross-examinations of the State's witnesses and stipulated to facts which he should not have.

The State argues that even if defense counsel's opening statement that defense will make no attempt to excuse defendant's actions can be construed as a concession of defendant's guilt, the circuit court as trier of fact was aware of the State' burden to prove the offenses beyond a reasonable doubt. According to the State, defendant failed to demonstrate that had defense counsel's cross-examination of the State's case been more aggressive, the testimony would have been favorable to his defense or that the results of the trial would have

been different. The State maintains that defense counsel's decision not to cross-examine witnesses and to stipulate to certain facts and testimony particularly considering defendant's admission following proper *Miranda* warnings was trial strategy.

Defendant argues that defense counsel was ineffective for limiting his closing argument to the lesser offense of aggravated vehicular hijacking.

The State responds that defense counsel's closing argument was trial strategy.

Defense counsel provided effective assistance of counsel to defendant. Ultimately, it was defendant's own statement and not the actions or strategy of his counsel which undermined any claim of innocence that defendant may have had. *Shatner*, 174 Ill. 2d at 148, 673 N.E.2d at 264. Defense counsel is not ineffective for failing to make losing motions or objections. *People v. Bell*, 234 Ill. App. 3d 631, 640, 600 N.E.2d 902, 909 (1992). Defendant is entitled to competent, not perfect, representation. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *People v. Odle*, 151 Ill. 2d 168, 173, 601 N.E.2d 732, 735 (1992). Defendant has not established that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Defendant's arguments are further weakened by his waiver of the right to jury. In cases tried before the court, the court must disregard all evidence heard, except that which is competent and relevant, and is considered to possess such legal discernment when determining the degree of punishment. *People v. Miller*, 2 Ill. App. 3d 206, 211-12, 276 N.E.2d 395, 399 (1971). Unless it affirmatively appears that the court was misled or improperly influenced by incompetent or irrelevant evidence and arguments and remarks of counsel and that they were productive of a judgment and sentence contrary to the law and the evidence, we will not reverse. *Miller*, 2 Ill. App. 3d at 212, 276 N.E.2d at 399.

We next consider whether *Apprendi* requires the reversal of defendant's sentence where the circuit court imposed a sentence of natural life imprisonment for first degree murder.

In *Apprendi*, the United States Supreme Court ruled that a New Jersey statutory sentencing scheme violated defendant's due process rights. The Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. The Supreme Court reasoned that " 'it

is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. *** [S]uch facts must be established by proof beyond a reasonable doubt.' " *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2363, quoting *Jones v. United States*, 526 U.S. 227, 252-53, 143 L. Ed. 2d 311, 332, 119 S. Ct. 1215, 1228-29 (1999 ) (Stevens, J., concurring).

The Unified Code of Corrections provides for a term of not less than 20 years and not more than 60 years for the crime of first degree murder. 730 ILCS 5/5—8—1(a)(1)(a) (West 1994). Section 5—8—1(a)(1)(b), prior to its amendment via Illinois House Bill 1511 (91st Ill. Gen. Assem., House Bill 1511, 2000 Sess.), which became law on February 23, 2001, stated that "if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or, except as set forth in subsection (a)(1)(c) of this Section, that any of the aggravating factors listed in subsection (b) of Section 9—1 of the Criminal Code of 1961 are present, the court may sentence the defendant to a term of natural life imprisonment." 730 ILCS 5/5—8—1(a)(1)(b) (West 1994). Several Illinois courts have applied *Apprendi* and concluded that section 5—8—1(a)(1)(b) is unconstitutional because it violates a defendant's constitutional rights to due process and trial by a jury. *People v. Lee*, 318 Ill. App. 3d 417 (2000); *People v. Joyner*, 317 Ill. App. 3d 93, 739 N.E.2d 594 (2000). The courts have found that section 5—8—1(a)(1)(b) authorized a sentence of natural life for first degree murder based upon a finding that the murder was exceptionally brutal and heinous without requiring that that issue be submitted to a jury or proven beyond a reasonable doubt. *Lee*, 318 Ill. App. 3d 417; *Joyner*, 317 Ill. App. 3d at 110, 739 N.E.2d at 606-07. House Bill 1511 changed section 5—8—1(a)(1)(b) to establish that factors that could lead to a sentence of natural life imprisonment be proved beyond a reasonable doubt by a trier of fact.

Defendant argues that the factors justifying the extended sentence should have, in accord with due process, been charged in the indictment, subject to a jury determination, and proven beyond a reasonable doubt before the judge could impose a term greater than the standard maximum sentence. Defendant maintains that section 5—8—1(a)(1)(b) of the Unified Code of Corrections violates the constitutional mandates recognized in *Apprendi* because the judge has the sole responsibility to make factual assessments that serve to increase the prescribed range of penalties to which a criminal defendant is exposed. Defendant argues that the sentence of natural life imprisonment for murder must be either reduced or vacated and remanded.

The State responds that defendant should not be permitted to

raise this issue as he has never before challenged the constitutionality of his sentence or otherwise complained that the charging instrument was deficient. The State contends that defendant's challenge to his sentence is waived and should be summarily rejected. The State also alleges that because defendant failed to challenge the charging instrument prior to the conclusion of trial, this issue is waived unless defendant can prove that he was prejudiced by the deficiency. According to the State, defendant does not allege that he has been prejudiced by the alleged deficiency in the indictment.

■ Whenever a defendant challenges the trial court's statutory authority to impose a particular sentence, those contentions are not subject to waiver. *People v. Clifton,* 321 Ill. App. 3d 707 (2000); *Lee,* 318 Ill. App. 3d 417.

The State argues in the alternative that even if this court decides to reach the merits of defendant's arguments, the *Apprendi* decision does not apply to defendant's case. The State claims that prior to imposing a sentence of natural life imprisonment, the circuit court found beyond a reasonable doubt that defendant was eligible for the death penalty pursuant to section 9—1(b) (720 ILCS Ann. 5/9—1(b)(6) (Smith-Hurd Supp. 2000)). Section 9—1(b) provides:

"(b) Aggravating Factors. A defendant who at the time of the commission of the offense has attained the age of 18 or more and who has been found guilty of first degree murder may be sentenced to death if:

\* \* \*

(6) the murdered individual was killed in the course of another felony if:

(a) the murdered individual:

(i) was actually killed by the defendant, \*\*\*

\* \* \*

(b) in performing the acts which caused the death of the murdered individual \*\*\*, the defendant acted with the intent to kill the murdered individual or with the knowledge that his acts created a strong probability of death or great bodily harm to the murdered individual \*\*\*; and

(c) the other felony was one of the following: \*\*\* aggravated vehicular hijacking[.]" 720 ILCS Ann. 5/9—1(b)(6) (Smith-Hurd 2000).

The State argues in accord with section 9—1(b)(6) that defendant was over 18 years of age at the time of the offense and that defendant committed the murder in the course of his aggravated vehicular hijacking felony. Based on this finding, the State maintains that the trial court properly sentenced defendant to natural life imprisonment because defendant committed the murder and an aggravating factor

was present permitting such a sentence. 730 ILCS 5/5—8—1(a)(1)(b) (West 1994).

In *Joyner*, 317 Ill. App. 3d 93, 739 N.E.2d 594, the State, as in the instant case, sought the death penalty against defendant. In sentencing defendant, the trial court found that two mitigating factors precluded imposition of the death penalty: defendant's youth and his lack of significant criminal history. The trial court sentenced defendant to natural life imprisonment because the murder was exceptionally brutal and heinous and the aggravating factor of a preconceived plan set forth in section 9—1(b)(11) was also present. *Joyner*, 317 Ill. App. 3d at 108, 739 N.E.2d at 605. The appellate court agreed with defendant, finding that the record did not support the trial court's conclusion that the murder was premeditated. *Joyner*, 317 Ill. App. 3d at 108, 739 N.E.2d at 605. The appellate court also found that section 5—8—1(a)(1)(b) makes no provision for the submission of the exceptionally brutal and heinous issue to a jury, does not require that the State prove that fact beyond a reasonable doubt at any stage and, therefore, is unconstitutional. *Joyner*, 317 Ill. App. 3d at 110, 739 N.E.2d at 606. At the eligibility stage of a death penalty case, the qualifying aggravating factors found in section 9—1(b) must be proved beyond a reasonable doubt and defendant has a right to a jury's determination of the existence of such factors in accord with sections (d) and (f) of that section. *Joyner*, 317 Ill. App. 3d at 110, 739 N.E.2d at 606.

On June 7, 1999, the trial court in the case at bar asked defendant whether he wanted to waive his right to a jury trial and have the judge hear his case. He answered that he did wish to waive his right to a jury trial. The judge then admonished him that a death penalty case has three phases: (1) the phase where the jury would hear the evidence and unanimously determine whether the State proved defendant guilty beyond a reasonable doubt; (2) the phase where the State has the burden to prove beyond a reasonable doubt that he was eligible for the death sentence and that if one juror decided he was not eligible then he would not be sentenced to death; and (3) then the death phase, where the jury would have to unanimously find that there were no mitigating factors to preclude the imposition of death. Defendant stated that he understood that he was giving up his right to a jury trial in each phase but also understood that he still could invoke that right on the stages left before him.

At the end of trial, the court found that the State proved each and every element beyond a reasonable doubt, finding him guilty of first degree murder on counts I through III and aggravated vehicular hijacking on count IV. On July 13, 1999, just prior to the hearing on

the eligibility of defendant for the death penalty, the State asked the court for purposes of eligibility for the death penalty to take judicial notice of the judge's own finding on June 7, 1999, that the court had found defendant guilty of first degree murder as well as the felony count of aggravated vehicular hijacking. The court did so without objection from defense counsel and later found defendant eligible for the death penalty. A hearing was then held on the sentencing phase, whereupon the court heard testimony and determined that there were mitigating factors to preclude the imposition of death. The trial court then proceeded to sentence defendant to natural life on the first degree murder charges and 30 years on the aggravated vehicular hijacking charge to run concurrently.

Nowhere in the record does the trial court state that defendant was sentenced to natural life because the murder was accompanied by exceptionally brutal or heinous behavior. The record does, however, identify an aggravating factor from the list found in subsection (b) of section 9—1 of the Criminal Code of 1961, aggravated vehicular hijacking. The defendant waived his right to a jury during the death penalty case and the court found beyond a reasonable doubt that defendant was guilty of aggravated vehicular hijacking. Where the trial court sentenced defendant to natural life imprisonment pursuant to an aggravating factor listed in section 9—1(b) for which he waived his right to a jury and the State proved beyond a reasonable doubt that defendant committed aggravated vehicular hijacking, *Apprendi* does not require the reversal of defendant's sentence. "A sentence of natural life in prison can be imposed pursuant to section 5—8—1(a)(1)(b) only if the trial court finds the existence of a certain fact, either that the crime was committed in a particularly brutal and heinous manner indicative of wanton cruelty or that one of the aggravating factors listed in section 9—1(b) of the Criminal Code exists." *Lee*, 318 Ill. App. 3d at 422.

Our decision in the instant matter in no way parts company with our decisions in *People v. Beachem*, 317 Ill. App. 3d 693, 740 N.E.2d 389 (2000), and *Joyner*, 317 Ill. App. 3d 93, 739 N.E.2d 594. Rather, this court finds where defendant had the right to have a jury decide whether the State proved him guilty beyond a reasonable doubt of one of the aggravating factors found in section 9—1(b) during his death penalty case, but waived that right, *Apprendi* will not be applied to reverse a sentence of natural life imprisonment for first degree murder pursuant to section 5—8—1(a)(1)(b) of the Unified Code of Corrections. *People v. Williams*, 317 Ill. App. 3d 945, 956-58, 742 N.E.2d 774, 783-85 (2000). Once the court determined that defendant was death eligible, the sentencing range became anywhere from 20 years to nat-

ural life imprisonment. Defendant's sentence fell within that range, so *Apprendi* does not apply.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

HOFFMAN and BARTH, JJ., concur.