THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHRISTOPHER MOORE, Defendant-Appellant.

First District (4th Division)   No. 85—1447

Opinion filed August 20, 1987.

James J. Doherty, Public Defender, of Chicago (Alison J. Norwood, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Paula Carstensen, and Mitchell S. Sexner, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Defendant, Christopher Moore, was convicted of one count of armed violence predicated on voluntary manslaughter and one count of concealment of a homicidal death. He was sentenced to 12 years for armed violence and seven years for the concealment of a homicidal death, both sentences to be served concurrently. On appeal, the armed violence conviction was vacated and the cause remanded for resentencing. *People v. Moore* (1984), 128 Ill. App. 3d 505, 516-18, 470 N.E.2d 1284, 1293.

On remand, the trial court sentenced Moore to 12 years for voluntary manslaughter and five years for concealment of a homicidal death, to be served concurrently. He appeals, contending that (1) the trial court erred in imposing an extended term of 12 years for voluntary manslaughter because of its finding that Moore committed the homicide under the belief, although unreasonable, that he was acting in self-defense; (2) the extended term for voluntary manslaughter was "impermissible since defendant received a greater sentence upon resentencing than the sentence imposed at his original sentencing"; and (3) the sentences are *per se* invalid because a new presentence report was not produced before resentencing.

We affirm.

BACKGROUND

The facts brought out during Moore's trial are detailed in the opinion arising out of Moore's original appeal. (*People v. Moore* (1984), 128 Ill. App. 3d 505, 470 N.E.2d 1284.) In brief, Moore and two other men were in the home of Albert Wooden on the night of December 12, 1980, sitting in the kitchen drinking beer. When they heard noises from someone attempting to enter the house, they turned off the lights and waited for the person to enter. A 14-year-old neighborhood boy entered the living room. Moore and the other men ran in and began beating the boy. The boy fled to a basement, where he attempted to hide behind a furnace. The men pursued him and beat him to death with their fists, a hammer, a knife, a table leg with a nail protruding from its base, a shoe, and a stick. The injuries to the boy included a gaping 6-inch by 4-inch wound on the side of his head, through which much of his brain had spilled out. There were four other lacerations on his head, as well as multiple abrasions and bruises, and the cause

of death was determined to be cranial cerebral injury due to beating. Afterwards the men pulled the lifeless body out and wrapped it in thick plastic. They put the body on the trunk of a car and attempted to drive it away. Each time, the body rolled off the car. The men finally left the body lying in the alley.

After a bench trial, Moore was found guilty of armed violence, voluntary manslaughter, and concealment of a homicide. He received 12- and 7-year sentences for armed violence and for concealment of the homicide, respectively. We vacated the armed violence conviction to conform to the Illinois Supreme Court's holding in *People v. Alejos* (1983), 97 Ill. 2d 502, 455 N.E.2d 48, which prohibits the predication of an armed violence conviction on voluntary manslaughter, and remanded for resentencing.

After the resentencing hearing, during which the court considered the presentence report prepared for the bench trial, the court imposed a 12-year, extended-term sentence for voluntary manslaughter and a five-year term on the concealment charge.

OPINION

I

Voluntary manslaughter was classified as a Class 2 felony at the time of the offense. (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(c).) As such, it carried a prison term of up to seven years (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(5)), unless factors in aggravation justified imposition of an extended term, in which case a possible maximum term of 14 years could be imposed. (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—5—3.2, 1005—8—2(a)(4).) These factors include "exceptionally brutal or heinous behavior indicative of wanton cruelty." In this case the court found that Moore's actions "in terms of circumstances of the victim's death, were perhaps the most gruesome [one] could possible [*sic*] imagine." Although Moore was found to have killed under an unreasonable belief that he was acting in self-defense, the court specifically found that his acts were heinous and extremely and excessively brutal. Nevertheless, Moore contends that since voluntary manslaughter is committed without a calculated intent to commit murder, he should not be subjected to the exceptional punishment provisions of the sentencing code.

■■ We cannot agree with Moore's analysis. He relies primarily on two Illinois Supreme Court cases, *People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520, and *People v. Alejos* (1983), 97 Ill. 2d 502, 455 N.E.2d 48, for the proposition that it is inherently improper for a

trial judge to impose an extended term for voluntary manslaughter. Neither case so holds.

In *People v. Evans*, a bystander was killed by a stray bullet. The defendant was shooting at another man, who he believed was trying to kill him. All of his acts were directed toward the man he was trying to kill in what he believed was self-defense. Accordingly, the court found that he had not acted with wanton cruelty and an extended term was not appropriate under the circumstances.

In *People v. Alejos*, the court was not faced with the issue of whether an extended term could be imposed for a voluntary manslaughter conviction. Rather, the court was concerned with the propriety of an armed violence conviction when predicated on voluntary manslaughter, reasoning that this *unpremeditated* crime is not as likely to be deterred by threat of punishment as murder may be. Since the armed violence statute provides enhanced punishment for felonies which are accompanied by the use of deadly weapons, and a person acting under a subjective but unreasonable belief of self-defense is not likely to be initiating a crime or intending to use excessive violence to commit a felony, the deterrent rationale for the armed violence statue is not met.

In the instant case, however, the uncontroverted facts establish that Moore participated in a series of brutal acts that were highly disproportionate to the danger posed by a 14-year-old boy who fled the three men who were beating him. It is true that the victim was engaged in a crime that could well have caused the men to fear for their safety, at least initially. The home of Moore's codefendant was being broken into. However, the boy had no gun. No knife purportedly belonging to him was ever found. At the point that the victim attempted to escape his attackers, by running and hiding in the basement, his threat to their safety was obviously diminished. The evidence was that the three men trapped the boy in his hiding place and beat him with such savagery and unrelenting brutality that they splattered his brains and blood all over the basement floor. They did not simply subdue and overcome him with their superior numbers and strength.

To adopt Moore's position, that an extended term is inconsistent with voluntary manslaughter as a matter of law, is to ignore the distinction between a stray bullet and an extensive beating administered with fists, a hammer, and a table leg with a protruding nail. In *People v. Kalec* (1982), 109 Ill. App. 3d 696, 700, 440 N.E.2d 1254, 1257, the court imposed an extended-term sentence for a voluntary manslaughter conviction. The defendant, acting under a sudden and intense passion, shot the victim four times with a shotgun. In finding that this

behavior was indicative of wanton cruelty, the court noted that any of the four bullets would have killed the victim, yet defendant kept shooting. As the *Evans* and *Kalec* cases demonstrate, not all voluntary manslaughters are alike.[1]

The finder of fact is well equipped to make distinctions between acts that are performed with wanton cruelty and those that are not. Voluntary manslaughter is not, as Moore seems to argue, an *unintentional* crime. True, it is not premeditated, offensive conduct designed to kill without any justification whatsoever. However, voluntary manslaughter is unlike involuntary manslaughter, for example, in that it does involve an actual intent to kill. This intentional or knowing killing is based upon a belief that the circumstances justify it, although the belief is unreasonable. (See *People v. Fausz* (1983), 95 Ill. 2d 535, 449 N.E.2d 78.) It may be provoked by a sudden passion or an unreasonable belief that one's life is endangered. It may be accomplished without deliberate cruelty, as in the case of a homeowner shooting an unarmed intruder in the dark out of fear. Or it may be accompanied by gratuitous brutality, as in the pending case.[2]

We find no error in the imposition of an extended term sentence in this case.

## II

■ Because of our holding, we find no merit to Moore's second contention, that his new sentence is somehow greater than his original sentence. The total number of years to be served is the same, 12 years. Moore maintains, however, that the imposition of an extended term violates section 5—4 of the sentencing code. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—4.) This section provides that once a sentence

---

[1]Moore's reliance on the recent decision of *People v. Gil* (1987), 155 Ill. App. 3d 436, 508 N.E.2d 309, is misplaced because the appellate court in that case found that the facts surrounding the death of the victim could not be characterized as exceptionally brutal or heinous. The victim was shot once in the home of his ex-wife, who feared for her safety, and left to die. As the *Gil* court suggested, the intent to take human life is not exceptionally brutal in and of itself, at least in the context of voluntary manslaughter. The court further found that the trial court had impermissibly sentenced defendants to a total of 18 years by ordering the 4-year term for concealment of the homicide to be consecutive to the 14-year maximum, extended term for voluntary manslaughter.

[2]We note that, effective July 1, 1987, the statutory offense of voluntary manslaughter will be replaced with the offense of second degree murder, which will incorporate the sudden passion and unreasonable belief in self-defense concepts as mitigating factors available to reduce a first-degree murder charge. Ill. Ann. Stat., ch. 38, par. 9—2 at 150 (Smith-Hurd Supp. 1987).

has been set aside on review, "the court shall not impose a new sentence for the same offense or for a different offense based on the same conduct which is more severe than the prior sentence." Although it is not clear why Moore believes the new 12-year sentence is more severe than the old one, he appears to harken back to the point raised in the first issue: that voluntary manslaughter is a lesser offense than armed violence predicated on voluntary manslaughter. Therefore, the extended term of 12 years is impermissibly greater than the seven-year maximum term that would be imposed absent the extended-term provisions.

The one case Moore cites, *People v. Cunitz* (1978), 59 Ill. App. 3d 701, 375 N.E.2d 1020, does not support his position. There the defendant was originally sentenced to consecutive terms of 3 years, 4 months to 10 years each for felony theft and felony escape. The appellate court reviewed the evidence and determined that the facts would only support misdemeanor theft, along with the felony escape. On remand, the misdemeanor count was given a 364-day term but the felony escape count was greatly increased, to 5 to 20 years. Accordingly, the maximum term of 10 years was doubled on remand, which contravened the prohibition contained in section 5—4.

### III

■ The third point for our review is whether or not the sentences imposed against Moore were invalidated by the fact that a new presentence report was not prepared. Initially, we note that the transcript is devoid of defense counsel's objection to the use of the original report in lieu of a new one. Nor was this point raised by motion following the sentencing. It is generally the duty of the parties to bring to the attention of the sentencing judge any alleged deficiency or inaccuracy in the presentence report. (*People v. Meeks* (1980), 81 Ill. 2d 524, 533, 411 N.E.2d 9, 14.) Absent objection or a request for a supplemental report, the defense contention that the report lacked sufficiently current information is waived. *People v. Burba* (1985), 134 Ill. App. 3d 228, 238, 479 N.E.2d 936, 943; *cf. People v. Youngbey* (1980), 82 Ill. 2d 556, 565, 413 N.E.2d 416 (presentence report may not be waived because it is a mandatory requirement).

■ While Illinois law requires a written presentence report of investigation to be presented to and considered by the court before it imposes a felony sentence (Ill. Rev. Stat. 1983, ch. 38, par. 1005—3—1), we are aware of no case that mandates the trial court to order a new report upon resentencing when the original one is considered and there is no claim that the information in the report is old or incomplete.

In *People v. Harris* (1985), 105 Ill. 2d 290, 473 N.E.2d 1291, upon which Moore relies, there was no presentence report considered after defendant's trial, when he was sentenced to probation. Nor was there a complete report submitted at the hearing to revoke his probation. In finding that the presentence requirement applies to probation revocation hearings, the court held that a complete report must be filed before the probation revocation, rather than the "up-dated" report that was submitted for only the period covering the probation itself. This report was found to be totally inadequate and the case was remanded for resentencing. The court reiterated its prior rulings that the purpose of the written presentence investigation is to ensure that the judge will have all necessary information concerning the defendant before sentence is imposed.

In the pending case the court had all necessary information from the original presentence report and also heard additional testimony.

We find no error in the trial court's resentencing determination and accordingly affirm the sentences in every respect.

Affirmed.

McMORROW, P.J., and JOHNSON, J., concur.