THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PETER JAMES PIRRELLO, JR., Defendant-Appellant.

Second District   No. 2—89—0062

Opinion filed January 8, 1991.—Rehearing denied February 1, 1991.

REINHARD, P.J., specially concurring.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Peter James Pirrello, Jr., appeals the judgment of the circuit court of Winnebago County sentencing him to the Department of Corrections for an extended term of 25 years upon his plea of guilty to the offense of voluntary manslaughter. (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(a)(1).) He claims the court abused its discretion in imposing the 25-year extended-term sentence given the evidence of the circumstances of the offense, which showed his subjective belief in the need to defend himself against the victim, and given the mitigation evidence presented at the sentencing hearing which established his strong rehabilitative potential.

The defendant originally was tried by a jury and convicted of the offense of murder following the shotgun shooting of 23-year-old Mark Thomas. The factual basis for the plea presented by the prosecutor was as follows:

> "Shortly before July of 1985, the ex-wife of this defendant, Peter Pirrello, Jr., together with her boyfriend, was killed in her parents' Rockford home. Pirrello had strong feelings for her in spite of the divorce and told friends he was grieving over her death.
>
> He came to believe that a young man named Mark Thomas was involved somehow in the double homicide even though the police found no evidence of that.
>
> On July 23, 1985, Pirrello saw Thomas at a Rockford bar and summoned him over to his table. Then and there, Pirrello asked Thomas to get cocaine for him, and Thomas agreed. The two of

them left together on a motorcycle. Pirrello had driven to the bar ostensibly to travel to another location to complete the drug transaction.

They went to a private gun club in northern Winnebago County in a wooded, remote area. Once at the gun club, Pirrello produced a shotgun from somewhere on his motorcycle and began shooting at Thomas. Three shots of five that were fired struck Thomas. He was shot once in the left buttock and once in the upper back on the right side. The third shot blew most of his head off.

Thomas was later found by a passer-by lying on his stomach. The location of the five spent shells and one live shell in relation to his body suggested he was trying to get away from Pirrello when the shooting started and that Pirrello was going on after him.

Pirrello returned to a bar in Rockford after killing Thomas. There he bragged to three persons that he had just blown the head off the guy who killed his wife. ***

At the murder trial that was held in this case, Pirrello testified that he and Thomas went to the gun club to complete a sale from Pirrello to Thomas of a shotgun. He said that he handed the gun to Thomas to try out and then that Thomas unexpectedly turned the gun on him and said something about Pirrello's dying just like Leslie. *** Leslie was the ex-wife of Pirrello. Pirrello told the jury they struggled over the gun and that he managed to get the gun away from Thomas and then shot him.

The murder conviction was reversed on appeal."

In that appeal, this court found reversible trial errors which necessitated the remandment of the cause for a new trial. (*People v. Pirrello* (1988), 166 Ill. App. 3d 614.) Pursuant to the terms of the subsequent negotiated guilty plea, the State filed an amended information charging the offense of voluntary manslaughter (acting under a sudden and intense passion resulting from serious provocation by Mark Thomas) to which the defendant pleaded guilty, and the murder charge was dismissed. The plea negotiation did not include any agreement as to sentencing.

Following full admonitions pursuant to Supreme Court Rule 402 (107 Ill. 2d R. 402(a))—including the admonition that an extended term of up to 30 years could be imposed if the court found the defendant's conduct was brutal and heinous and indicative of wanton cruelty—acceptance of the defendant's plea and a sentencing hearing, the

court imposed the instant 25-year extended term on December 7, 1988. The court also admonished the defendant concerning his right to appeal as required in Supreme Court Rule 605. 107 Ill. 2d R. 605(b).

On December 12, the defendant filed a motion for reconsideration of the sentence as permitted under section 5—8—1 of the Unified Code of Corrections (the Code) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(c)). After argument on December 16 during which the defendant raised the same points he does here, the court denied the motion to reconsider. Immediately thereafter, the defendant tendered a motion pursuant to Supreme Court Rule 604(d) to withdraw his guilty plea. (107 Ill. 2d R. 604(d).) That motion was denied, and this appeal followed.

The defendant asserts that the reasonable likelihood that he acted out of self-defense during the incident in question belies any conclusion that his conduct demonstrated exceptional brutality and precludes imposition of an extended term. He argues the State's witnesses at sentencing failed to rebut the possibility that he, acting out of self-defense, first fired the fatal shot to the victim's head, and then—in a panic—fired additional shots as he ran away, striking the victim in the area of the left buttock, lower left back and the back of the right shoulder.

The defendant relies on *People v. Evans* (1981), 87 Ill. 2d 77, in support of his argument. There, the supreme court found improper an extended-term sentence imposed after defendant's conviction of voluntary manslaughter of an unintended victim where there was evidence the defendant believed he was acting in self-defense. The victim of the defendant's voluntary manslaughter, Wilson, was killed by an apparently stray bullet, and none of the defendant's actions were directed toward him, but, rather, toward another man, Davenport. Accordingly, the supreme court concurred in this court's determination that the voluntary manslaughter offense was not accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. In *dicta*, the court opined that, "[A]ctions committed under a subjective belief, albeit unreasonable, that the actions were in self-defense do not constitute wanton cruelty." (*Evans*, 87 Ill. 2d at 88.) As to Davenport, the court believed the evidence indicated that *all* the defendant's actions toward him were committed under the belief, albeit unreasonable, that he was acting in self-defense. Consequently, it could not conclude the aggravated battery upon Davenport was accompanied by wanton cruelty. 87 Ill. 2d at 89.

*People v. Fieberg* (1982), 108 Ill. App. 3d 665, also cited by the

defendant, does not directly support his argument on this issue. In imposing an extended-term sentence on the defendant, who was convicted of robbery and of aggravated battery, the trial court relied on the facts surrounding the aggravated battery whereas section 5—8—2 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2) permits an extended-term sentence only where the most serious offense of which the offender is convicted is accompanied by exceptionally brutal or heinous behavior. Because the robbery was the most serious offense of which the defendant was convicted, not the aggravated battery, and because the acts which accompanied the robbery did not constitute exceptionally brutal or heinous behavior, this court reduced the defendant's 14-year extended-term sentence to the 7-year maximum term. 108 Ill. App. 3d at 671.

Defendant acknowledges that *Evans* has not been read as establishing a *per se* prohibition against the imposition of extended terms in every voluntary manslaughter case. Noting the decisions in *People v. Moore* (1987), 159 Ill. App. 3d 1070 (extended-term sentence for conviction of voluntary manslaughter was upheld where, notwithstanding the defendant's subjective belief in self-defense, his and two other men's beating of a 14-year-old boy who broke into their home was savage and unrelenting), and *People v. Kalec* (1982), 109 Ill. App. 3d 696 (extended-term sentence for voluntary manslaughter accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty upheld where the defendant, acting under a sudden and intense passion, shot the victim four times despite the fact any one of the four bullets would have killed him), the defendant argues the instant cause is distinguishable in that there was none of the gratuitous brutality found in *Moore* and, in *Kalec*, there was no evidence of self-defense and the sentence was part of the plea negotiation.

■ We find defendant's argument unpersuasive. We note preliminarily that defendant pleaded guilty to the offense of voluntary manslaughter premised on his acting under a sudden and intense passion resulting from serious provocation *not* acting under an unreasonable belief in the need for self-defense. (Ill. Rev. Stat. 1985, ch. 38, pars. 9—2(a)(1), (b).) Defendant's version of the incident as related in the factual basis for his plea would not support a conviction under section 9—2(b) because there would be nothing "unreasonable" about his belief in the need for self-defense. Defendant's version is that Thomas grabbed the gun and pointed it at him and threatened to kill him. Clearly, any belief the defendant had in the need for self-defense would not have been unreasonable under those circumstances. On the other hand, the defendant's version of the events which occurred

would, if believed by the fact finder, support his conviction under section 9—2(a)(1) because it shows Mark Thomas admitting—and the defendant suddenly realizing—that Thomas shot and killed the defendant's wife, Leslie, and, worse, suddenly realizing Thomas was intent on the same ignominious end for the defendant, as well.

■ Even accepting that the defendant acted under a sudden and intense passion, the court could nonetheless conclude from the factual basis presented that the defendant's conduct was exceptionally brutal or heinous and indicative of wanton cruelty. Regardless of the sequence in which the shots were fired, one of the five shots fired by the defendant nearly decapitated Mark Thomas, yet defendant fired four other shots, two of which also struck Thomas. Moreover, rather than being utterly shaken by what had occurred, the defendant proceeded to a bar and boasted that he had "just blown the head off the guy who killed his wife."

Two concurrent 25-year extended-term sentences for voluntary manslaughter were approved in *People v. Timmons* (1984), 127 Ill. App. 3d 679, both on the ground that the defendant's shooting of the two victims was indicative of wanton cruelty and, further, that the defendant had previously been convicted of a Class 1 felony within the past 10 years. A 19-year extended-term sentence for second degree murder (formerly the offense of voluntary manslaughter) was upheld in *People v. Lindsay* (1990), 193 Ill. App. 3d 983. The defendant there was convicted by a jury of the second degree murder of his wife, whom he had bludgeoned to death in the heat of an argument about finances. He contended on appeal, as does the defendant here, that the court's extended-term sentence showed it sentenced him for first degree murder and rejected the mitigating evidence which the jury apparently accepted in finding him guilty of voluntary manslaughter rather than murder.

In affirming the extended-term sentence in *Lindsay*, this court adhered to the *Evans* court's holding that an extended-term sentence cannot be imposed on a defendant convicted of voluntary manslaughter whose actions were committed under a subjective belief, albeit unreasonable, that his actions were in self-defense. However, we also observed that the jury in *Lindsay* was also instructed that it could find the defendant guilty if it found he acted under a sudden and intense passion following serious provocation by his wife. Agreeing with the decision in *Kalec* in upholding the extended-term sentence, we stated:

> "Clearly, a murder performed by someone acting under such sudden and intense passion following provocation by the victim can be accompanied by brutal or heinous behavior indicative of

wanton cruelty." 193 Ill. App. 3d at 989.

■ We conclude the trial court did not err in imposing the 25-year extended-term sentence for the defendant's wantonly cruel voluntary manslaughter of Mark Thomas.

A related contention raised by the defendant is that the extended-term sentence is excessive because it is not commensurate with his personal rehabilitative potential as shown by the mitigating evidence presented at the sentencing hearing. That evidence purported to establish, *inter alia*, that he was remorseful, had personal support from his family based on his commitment to a strong marriage, spiritual support from his church based on his sincere religious beliefs and financial support based on his past job performance and present ability and employment potential.

■ We find the defendant's contention, unsupported by citation of authority, is without merit. The sentencing range for voluntary manslaughter, a Class 1 felony, is 4 to 15 years; extended, such term ranges from 15 to 30 years. (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—8—1(a)(4), 1005—8—2(a)(3).) At the sentencing hearing, the court expressly acknowledged the defendant's self-rehabilitative efforts and imposed a 25-year extended-term rather than the maximum 30-year term it could have imposed.

■ The standard of review of a sentence alleged to be excessive is whether, in fact, the trial court exercised its discretion and, if so, whether this discretion was abused. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154; *People v. Camp* (1990), 201 Ill. App. 3d 330, 340.) Absent an abuse of discretion on the part of the trial court, a sentence imposed within the statutory limits will not be disturbed on review. *People v. Noble* (1990), 201 Ill. App. 3d 1056, 1058.

■ The trial court was not required to give greater weight to the defendant's rehabilitative potential than to the seriousness of this brutal offense. (*People v. Mack* (1985), 133 Ill. App. 3d 788.) Moreover, the trial court heard evidence of the defendant's criminal history as a juvenile (disorderly conduct; curfew violation; sale of LSD to a minor on three separate occasions) and as an adult (unlawful use of weapons; obstructing a police officer).

It is clear the trial court here exercised its sentencing discretion when it carefully weighed all the evidence received in aggravation and mitigation and no abuse of that discretion is shown on this record.

Finally, in his reply brief, the defendant argues this extended-term sentence should be disapproved in light of three recent cases, *People v. Lucas* (1989), 132 Ill. 2d 399, *People v. Andrews* (1989), 132 Ill. 2d 451, and *People v. Anderson* (1990), 201 Ill. App. 3d 75. In general,

those cases support restrictive application of extended sentencing statutes inasmuch as every offense is not intended thereby to be converted " 'into an extraordinary offense subject to an extended-term sentence.' " *Andrews*, 132 Ill. 2d at 466, quoting *People v. Evans* (1981), 87 Ill. 2d 77, 88-89.

■ The issue defendant now seeks to present was not and need not have been included in his motion to reduce his sentence in order to preserve it for appeal. (*People v. Thomas* (1990), 193 Ill. App. 3d 525, 527.) However, it was not raised in his initial brief, either, and, pursuant to the requirements of Supreme Court Rule 341(e)(7), it is not properly raised in his reply brief. (113 Ill. 2d R. 341(e)(7).) Although the opinions in *Lucas* and *Andrews* were filed shortly after the filing of the defendant's initial brief and *Anderson* was filed after all briefs had been filed, those cases do not announce any "new law" which would serve to excuse the defendant's failure to raise the issue initially. As is evident from the *Andrews* court's quote taken from *Evans* above, the concept that section 5—8—2 of the Code is not intended to subsume every offense under the "exceptionally brutal and heinous" conduct which warrants an extended term is not new. Defendant relied on *Evans* in his initial brief, yet he did not raise the issue at that time when the State would have had an opportunity to respond.

In declining to address the merits of this issue, we note the conduct in *Lucas, Andrews* and *Anderson* did not involve the wantonly cruel conduct evident here. In *Lucas* (132 Ill. 2d at 446), the defendant's death sentence was vacated and the cause remanded where there was no conclusive evidence that the seven-month-old victim's suffocation death—which possibly was caused by a single blow—was premeditated, prolonged or tortuous so as to warrant a finding that the defendant's conduct was exceptionally brutal or heinous *and* indicative of wanton cruelty. In *Andrews* (132 Ill. 2d at 466), the defendant's 70-year extended term for murder was reversed and the cause remanded where the defendant's point-blank shooting of the victim in the right temple before stealing $7 from the victim's girlfriend was found not to be "exceptionally" brutal or heinous, and the defendant had no criminal history of violence, there was no evidence of premeditation and the trial court accepted the defendant's expression of remorse as sincere. In *Anderson* (201 Ill. App. 3d at 80), the murder defendant's 75-year extended-term sentence was reduced to 40 years where the trial court made no finding that the killing of the victim, who was shot twice in the neck during a struggle over a gun when she rebuffed the defendant's sexual advance, was accompanied by ex-

ceptionally brutal or heinous behavior indicative of wanton cruelty, and the court observed that the extended-term provision is meant for murders that go beyond the mere infliction of death.

The instant killing cannot be said to have been premeditated because the defendant was convicted of voluntary manslaughter as the result of a sudden and intense passion. However, the excessive firepower unleashed upon the disarmed assailant, the inhumane boasting subsequently engaged in by the defendant concerning the killing, and the defendant's prior adult criminal history involving the unlawful use of weapons and unprovoked violent conduct in obstructing a peace officer distinguish the instant cause from *Lucas*, *Andrews* and *Anderson* and support the extended-term imposed.

The judgment of the circuit court of Winnebago County is affirmed.

*Affirmed.*

GEIGER, J., concurs.

PRESIDING JUSTICE REINHARD, specially concurring:

Although I agree with the majority in affirming the judgment of the circuit court, I am unable to agree with the opinion on three points. First, the majority deemed that an argument in defendant's reply brief concerning the restrictive application of the brutal and heinous behavior factor for an extended-term sentence has been waived for failing to raise it specifically in defendant's initial brief. The State has not raised this waiver argument. In its initial brief, defendant argued that the trial court abused its discretion in imposing an extended term pursuant to section 5—5—3.2(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(2)). Although defendant primarily contended that because he acted in self-defense his actions failed to rise to the level of exceptionally brutal or heinous conduct indicative of wanton cruelty, defendant also generally contended that the imposition of an extended term was improper. On this basis alone, the issue was preserved, and citation of new cases following the filing of the initial brief was proper. In any event, while the majority claims that *People v. Lucas* (1989), 132 Ill. 2d 399, and *People v. Andrews* (1989), 132 Ill. 2d 451, fail to announce "new law," those cases show a narrower application by the Illinois Supreme Court of extended-term sentences for exceptionally brutal or heinous behavior. (Compare *People v. La Pointe* (1981), 88 Ill. 2d 482, 501, with *Lucas*, 132 Ill. 2d at 445.) I would not find this argument waived.

Secondly, the majority finds that the killing could not have been premeditated because defendant was convicted of voluntary manslaughter as a result of a sudden and intense passion. However, there is evidence that the killing was planned by defendant to avenge the prior killing of his former wife. Thus, it was premeditated. Even assuming defendant killed the victim as a result of a sudden and intense passion, or as a result of self-defense as defendant appears to argue on appeal, such results are not necessarily inconsistent with premeditation. Premeditation could have occurred prior to either. Because premeditation can show exceptionally brutal behavior indicative of wanton cruelty (*Lucas*, 132 Ill. 2d at 445), I agree with the majority that an extended term is appropriate.

I note, as did the trial judge, that the obvious dichotomy between premeditation and the lesser mental state for voluntary manslaughter under the evidence adduced at the sentencing hearing resulted because the parties apparently agreed to let each side present its theory to the court following remand after the reversal of the original conviction. While I view the procedure as unwise, it was the method pursuant to which the parties chose to proceed. Thus, defendant cannot now object to a procedure in which he acquiesced. *Cf. People v. Schmitt* (1989), 131 Ill. 2d 128, 137.

Lastly, the majority considered, *inter alia*, defendant's prior adult criminal history in finding brutal and heinous behavior to justify imposing the extended-term sentence. Although our supreme court in one case apparently considered prior criminal history (*Andrews*, 132 Ill. 2d at 466), section 5—5—3.2(b)(2) specifically refers to "the offense" of which the defendant was convicted and does not refer to prior criminal history. I do not consider prior criminal history to be an appropriate consideration to find brutal and heinous behavior under section 5—3—3.2(b)(2). On the other hand, once brutal and heinous behavior is found, then prior criminal conduct may be considered in determining the length of the extended sentence.