NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances al-
lowed under Rule 23(e)(1).

FILED
August 10, 2021
Carla Bender
4th District Appellate
Court, IL

2021 IL App (4th) 200557-U

NO. 4-20-0557

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| JEFFREY D. DUHAIME, | ) | No. 16CF31 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles M. Feeney III, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court affirmed defendant's 19-year sentence for drug-induced
homicide because the trial court (1) was not required to obtain a new presentence
investigation report and (2) did not err by finding no statutory factors in
mitigation.

¶ 2        In March 2016, the State indicted defendant, Jeffrey D. Duhaime, on three counts

(counts I-III) of drug-induced homicide (720 ILCS 5/9-3.3(a) (West 2014)) and two counts (counts

IV-V) of delivery of a controlled substance (720 ILCS 570/401(c)(7)(ii), 401(d) (West 2014)). The

State alleged that on December 18, 2015, defendant delivered lysergic acid diethylamide (LSD) to

Keionta Williams, which caused her death. Counts I and IV alleged that defendant delivered more

than 10 objects containing LSD in violation of section 401(c) of the Illinois Controlled Substances

Act (Act) (*id.* § 401(c)). Under the drug-induced homicide statute, a person who commits a

drug-induced homicide in violation of section 401(c) of the Act is subject to a prison sentence of

not less than 15 years and not more than 30 years. 720 ILCS 5/9-3.3(c) (West 2014).

¶ 3        In December 2016, a jury convicted defendant on all counts. In February 2017, the trial court sentenced defendant to 20 years in prison under subsection (c) of the drug-induced homicide statute. See *id.*

¶ 4        On appeal, this court affirmed defendant's convictions for drug-induced homicide and delivery of a controlled substance but vacated defendant's convictions for delivering more than 10 objects containing LSD, concluding the evidence was insufficient. *People v. Duhaime*, 2019 IL App (4th) 170223-U, ¶¶ 91, 101. We remanded the case for a new sentencing hearing. *Id.* ¶ 101.

¶ 5        In February 2020, the trial court conducted a sentencing hearing on defendant's remaining convictions and sentenced him to 19 years in prison.

¶ 6        Defendant appeals, arguing the trial court (1) erred by failing to obtain and consider an updated presentence investigation report (PSI) and (2) abused its discretion when it failed to consider a statutory factor in mitigation. We disagree and affirm.

¶ 7                                    I. BACKGROUND

¶ 8                                    A. The Charges

¶ 9        In March 2016, the State indicted defendant on three counts of drug-induced homicide and two counts of delivery of a controlled substance. Count I alleged defendant (1) committed drug-induced homicide by delivering more than 10 objects containing LSD in violation of subsection (c) of section 401 of the Act (720 ILCS 570/401(c)(7)(ii) (West 2014)) to individuals attending a party in Kappa, Illinois, on December 18, 2015, and (2) Keionta Williams died as a result of ingesting that LSD. Because count I alleged delivery of more than 10 objects, defendant upon conviction was subject to a sentence of between 15 and 30 years in prison. See

720 ILCS 5/9-3.3(c) (West 2014). Counts II and III alleged (1) defendant delivered LSD in violation of subsection 401(d) of the Act and (2) Williams died as a result of ingestion of that LSD. If convicted of either count II or III, defendant was subject to a sentence as in any other Class X felony—namely, a prison sentence between 6 to 30 years. See *id.* § 9-3.3(b).

¶ 10    Count IV alleged defendant delivered more than 10 objects containing LSD to individuals at the party on December 18, 2015, a Class 1 felony. See 720 ILCS 570/401(c)(7)(ii) (West 2014). Count V alleged defendant delivered LSD to Williams at that same party, a Class 2 felony. See *id.* § 401(d).

¶ 11                                B. The Trial

¶ 12    In December 2016, the trial court conducted defendant's jury trial. A more detailed description of the evidence presented at trial can be found in our prior decision. See *Duhaime*, 2019 IL App (4th) 170223-U, ¶¶ 13-49.

¶ 13    In summary, the evidence showed that on December 18, 2015, Williams and a friend attended a party organized in part by defendant in Kappa. At the party, Williams and her friend obtained LSD from defendant. A few hours after taking the LSD, Williams "freak[ed] out," "looked terrified," and "took off running" into a field adjacent to the party. Partygoers looked for Williams in the surrounding area but could not locate her. At around 2 a.m., a bus traveling north on Interstate 39 struck and killed Williams, whom a crash reconstruction expert determined was walking in a lane of traffic. Several partygoers identified defendant as the person who sold Williams and others LSD.

¶ 14    The jury convicted defendant on all five counts, including delivery of more than 10 objects of LSD.

¶ 15                                C. The Sentencing Hearing

- 3 -

¶ 16         In February 2017, the trial court conducted defendant's sentencing hearing. The court noted that counts II through V were lesser included offenses of drug-induced homicide and therefore sentenced defendant only on count I, which had a sentencing range of 15 to 30 years in prison. The presentence investigation report indicated defendant had (1) prior convictions involving drugs and (2) completed drug treatment. The court believed defendant's prior involvement with drugs, as well as his continued involvement after treatment, demonstrated that (1) he should have known the dangers of drug dealing and (2) a lengthy sentence was necessary to deter others. The court also noted that defendant blamed others for his problems rather than taking responsibility and his attitude—demonstrated by his actions and demeanor both before his arrest and during the criminal proceedings—showed "arrogance" and lack of rehabilitative potential. The court sentenced defendant to 20 years in prison to be served at 75%.

¶ 17                        D. The Direct Appeal

¶ 18         On direct appeal, defendant challenged his convictions on the grounds that (1) the trial court gave an improper jury instruction for causation and (2) the State failed to present sufficient evidence to support a conviction beyond a reasonable doubt. This court concluded that (1) the jury was properly instructed, (2) the State presented sufficient evidence that defendant's delivery of LSD to Williams was a cause of her death, and (3) the evidence that defendant delivered more than 10 objects containing LSD was so unsatisfactory that it created a reasonable doubt as to defendant's guilt. *Duhaime*, 2019 IL App (4th) 170223-U.

¶ 19         This court vacated defendant's convictions on counts I and IV. Because the trial court sentenced defendant only on count I, we remanded the case for a new sentencing hearing. *Id.* ¶ 103.

¶ 20                        E. The Proceedings on Remand

¶ 21 In February 2020, the trial court conducted a sentencing hearing. The court noted that it had a copy of the original PSI from defendant's 2017 sentencing but did not have a supplement to the PSI or an updated PSI. Regarding the PSI, the State noted that it had declined to prosecute one of the criminal charges listed as pending in the original PSI. The State did not know the status of a second pending criminal case and assumed it was still pending. Defense counsel agreed with those changes and stated she had no further objections or changes.

¶ 22 The State offered a victim impact statement from the victim's father. The statement was the same statement admitted by the trial court at defendant's original sentencing.

¶ 23 Defendant's mother, Helen McIntosh, testified that she talked to defendant on the phone daily and wrote to him frequently while he has been in prison. McIntosh had "seen a lot of changes" in defendant and opined that he had matured, "grow[n] up," and "got his head clear." Defendant had accepted full responsibility for the death of Williams and "felt really bad about everything that's going on." McIntosh stated that defendant now realized that he never should have brought drugs to the party and he was suffering from his own "problems."

¶ 24 McIntosh testified she was thankful defendant had been sent to prison and believed defendant felt the same way. Defendant had plans for the future including (1) getting his General Educational Development certificate (GED), (2) learning trade skills from family members in Tennessee upon his release, and (3) speaking in classrooms about the dangers of drugs. On cross-examination, McIntosh acknowledged that she knew defendant was using marijuana starting around age 16 but stated defendant was living with his father at the time and she did not know he had any substance abuse problems.

¶ 25 Defendant testified that when he was originally sentenced at age 21, he was "young" and "stupid." Defendant stated he was arrogant and thought "I had everything figured

out" and "no harm would ever come from just hanging out and partying and doing all these things." Defendant now understood "all it takes is one time" and "the path that [he] chose cost somebody their life."

¶ 26   Defendant admitted he had a problem with marijuana and alcohol before he was sent to prison. Defendant explained that he started using marijuana at age 14 or 15 when he first moved to Illinois with his father. Defendant then started using alcohol, synthetic drugs, and "it just really led to a downward spiral." Defendant stated he "beat the habit" when he was put on probation at age 16 and explained that although he "didn't follow the terms and meet the conditions, [he] kept getting chances after chances with De[ ]Witt County probation." Defendant's probation was transferred to Bloomington when his father moved there, and at age 18, defendant completed a month-long inpatient drug treatment. Defendant stated he stayed sober for about six months after treatment.

¶ 27   Defendant testified that he relapsed after breaking up with his girlfriend. Defendant began using cocaine and "party drugs," "anything to mask the pain." Defendant stated he now realized that his repeated failure to follow through with probation demonstrated arrogance. Defendant stated he used LSD only once, the day Williams died. "I was young and arrogant and just wanted to do anything to try and have a good time and fit in with others." The following exchange occurred:

"Q. Did you think that giving someone LSD could end in not such a great way?

A. At the time, no. But today at this point in my life, absolutely.

Q. Did you ever think that someone would die as a result?

A. At the time, no.

Q. Can you see it now?

A. Absolutely."

Defendant explained that he did not realize the danger at the time because "I was wrapped up in my own problems, my own addiction, just this disease that I was fighting."

¶ 28    Defendant testified that he was glad he went to prison. During his four years of incarceration, defendant had to "look back and reflect on the decisions that [he] made then." Being in prison allowed him to "really work on myself and really find me, it's changed me for the better." Defendant stated he was ready to become a productive member of society, which was not the case when he committed the crime. Defendant said, "I can't thank the courts here in Woodford County for saving my life—I can't thank them enough for that." Defendant informed the court that he came to this realization on his own and believed he was "cured of this disease now."

¶ 29    Defendant stated he planned on obtaining a GED and pursuing higher education upon release. Although not required, defendant worked many different jobs while in prison. Defendant also attended a school program but was unable to finish because he was put in segregation for 90 days when he had a fight with his cellmate. Defendant explained that he caught his cellmate stealing from his commissary box and confronted him. The cellmate responded by punching defendant, and defendant fought back. Defendant stated he should have asked for assistance instead of fighting back because he was a big guy and probably could have taken it. Defendant had not been able to finish or reenter the school program because there was a long waiting list. Defendant stated he was also applying to be placed in drug and alcohol treatment and counseling.

¶ 30    Regarding his plan after release, defendant explained that he wanted to move to Tennessee and live with his mother and grandfather. Defendant had found a technical school that

had a "diesel repair program" that he wanted to attend. He further wanted to get involved in his mother's church and help his grandfather maintain the 200 acres of land he owned. Defendant acknowledged that he might not be allowed to move to Tennessee upon release. If required to stay in Illinois, defendant's father had already agreed to give him a place to live during the duration of his mandatory supervised release.

¶ 31       On cross-examination, defendant admitted (1) he sold LSD at the party, (2) he sold LSD to Williams, and (3) Williams died because of defendant's giving her LSD. The State cross-examined defendant extensively about the PSI and his statements therein. Defendant stated that he did not remember telling the probation officer preparing the PSI that he used two-thirds of a gram of cocaine a day and drank 12 to 14 beers a day. Defendant maintained he gave an "estimate" about how much cocaine he used and that the figures sounded like an exaggeration. Defendant stated he drank 12 to 14 beers when he attended parties, which was usually on Thursday, Friday, and Saturday nights. Defendant agreed that when he was 21, he lived in a college town that had parties on a daily basis. Defendant agreed that he used up to an eighth of an ounce of marijuana a day and self-medicated with marijuana and alcohol. The State further cross-examined defendant about the criminal history in the PSI, which defendant did not dispute, and his disciplinary history while in prison, which defendant also did not dispute.

¶ 32       The State argued that a 20-year sentence was appropriate based largely on the statements of drug and alcohol use in the PSI and defendant's prior failure to comply with probation despite multiple attempts. Defendant argued that a six-year sentence was appropriate because he had accepted responsibility, demonstrated his rehabilitative potential while in prison, and was now mature enough to become a productive member of society.

¶ 33       The trial court first determined that counts II and V were lesser included offenses

of drug-induced homicide and sentenced defendant only as to count III. The court then reiterated that it had considered the PSI, the statements attached thereto, the factors in aggravation and mitigation, and the testimony presented at the sentencing hearing. The court found no statutory factors in mitigation applied. Regarding statutory factors in aggravation, the court believed defendant's criminal history and deterrence were relevant factors. The court also considered as aggravating factors defendant's involvement in organizing the party, inviting "[p]eople of a young age," and the age of the victim.

¶ 34        The trial court stated as follows:

"But in looking at the Presentence Investigation—and I will agree with the arguments that have been made, especially by the defense, that, you know, that the defendant then versus the defendant now. But I am going to focus on both. But looking at the defendant then, you know, his statements as far as drug use, which have never been really changed until today, very different. His assertions are very different in regard to his cocaine usage. But his reported hobbies and activities he liked to do back then, get high, drink, and cruise. He—that tells me that he—his very existence, his focus of his life, was about existing with a reckless disregard for others. And the fact that the defendant has battled his substance abuse issues— although I don't think he was battling very hard at the time—I think he was hip deep in the throw of pursuing them with great vigor. And he inflicted the introduction of mind-altering substances onto other people. I think that's aggravating. He didn't do it out of aggravation—or out of ignorance. He did it out of a desire for money, really.

But there are very strong differences in how this court—and I would

imagine almost all courts—treat drug users, for instance, and drug dealers. And [defendant] falls in the latter category. And worse yet are those people that for profit distribute substances that impact the recipients of their poison by killing them. And that's where [defendant] finds himself as well.

The court did not give a great deal of weight to the number of units, or whatever, of parts of the LSD. There were minimum sentences involved, but I did not give overwhelming weight to that. And I really looked more at the defendant and his conduct and the victim and the tremendous harm that the defendant caused in trying to achieve a just sentence that is a balance between protecting society from someone so dedicated to throwing poison upon the youth of our society. And—but recognizing what—quite honestly, I did not see much rehabilitative potential in the defendant. And I see more of that now. I will say that. I see more rehabilitative potential because I did not see much of any."

¶ 35    The trial court stated that it appreciated defendant's admission of delivery of LSD to Williams and recognition of the harm he caused. The court also noted that defendant "appears to be less full of himself today than back then." Nonetheless, the court believed that "the minimum sentence would be an absolute travesty of justice." The court sentenced defendant to 19 years.

¶ 36    In October 2020, the trial court conducted a hearing on defendant's motion to reconsider sentence, in which defendant argued that the court did not adequately consider defendant's rehabilitative potential ("19 years is excessive in light of the progress that Defendant has accomplished in prison."). The court stated as follows:

"And to the extent that in this case I don't—it's an interesting analysis. I don't—I don't analyze a case as to what is the minimum, what is the maximum

and, you know, I was X number of years over the minimum, and then it comes back, and now I am—now I am, you know—I need to be the same X number of years over the minimum. That's not really how I analyze it. I weigh the factors, I weigh the evidence that was presented at trial, I weigh the—you know, listen to the arguments. I mean, in this case, as [the State]—or has alluded to, the defendant introduced a very powerful substance to a bunch of young people at this underage drinking party, and a very young woman, who had a bright future ahead of her, was killed as a direct result of the defendant.

So, I—I think that the sentence the court gave of 19 years, *et cetera*, is appropriate and fair and just, and I'm not going to reconsider it. Or—well, I'm not going to change it, is a better way to put it. So, motion to reconsider is denied."

¶ 37    This appeal followed.

¶ 38                              II. ANALYSIS

¶ 39    Defendant appeals, arguing the trial court (1) erred by failing to obtain and consider an updated PSI and (2) abused its discretion when it failed to consider a statutory factor in mitigation. We disagree and affirm.

¶ 40                    A. A New PSI Was Not Required

¶ 41    Defendant first argues that the trial court erred when it considered the original PSI and did not obtain a supplemental PSI or new PSI. Defendant contends that the original PSI was inadequate because it did not include information about the defendant from the three years after he was sentenced and was incarcerated. We disagree.

¶ 42                         1. *The Applicable Law*

¶ 43    The Illinois Constitution provides that "[a]ll penalties shall be determined both

- 11 -

according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "A defendant shall not be sentenced for a felony before a written presentence report of investigation is presented to and considered by the court." 730 ILCS 5/5-3-1 (West 2018). This statutory requirement is mandatory and cannot be waived by a defendant except in the cases designated by statute. *People v. Youngbey*, 82 Ill. 2d 556, 561 (1980). In any case in which the original sentence is vacated, "[t]he trial court shall hold a hearing under Section 5-4-1 of this Code which may include evidence of the defendant's life, moral character and occupation during the time since the original sentence was passed. The trial court shall then impose sentence upon the defendant." 730 ILCS 5/5-5-3(d) (West 2018).

¶ 44        "[T]he requirements of section 5-3-1 are met when the trial court considers a recently-prepared presentence investigation report which contains the information necessary for a sentencing decision. Accordingly, a new presentence investigation report is not required when a defendant is resentenced after his original sentence is vacated on appeal." *People v. Tucker*, 263 Ill. App. 3d 895, 898, 636 N.E.2d 1067, 1070 (1994); see also *People v. Young*, 124 Ill. 2d 147, 157, 529 N.E.2d 497, 502 (1988) (declining to read section 5-5-3(d) as requiring a supplemental PSI prior to resentencing); *People v. Moore*, 159 Ill. App. 3d 1070, 1075, 513 N.E.2d 87, 91 (1987) ("[W]e are aware of no case that mandates the trial court to order a new report upon resentencing when the original one is considered and there is no claim that the information in the report is old or incomplete.").

¶ 45                                    2. *This Case*

¶ 46        In this case, the trial court considered the original PSI, which complied with all statutory requirements at the time of the original sentencing. Unlike in *People v. Harris*, 105 Ill. 2d 290, 296, 473 N.E.2d 1291 (1995), the PSI included information about defendant's history and

character from his entire life up until his arrest. The PSI was not based on a small segment of defendant's life.

¶ 47     Defendant argues that the cases that hold a new PSI is not required on resentencing are distinguishable because those cases involved resentencing for a conviction that was affirmed on appeal whereas here defendant was sentenced on a completely different count. Defendant provides no support for his contention, nor does he explain why such a distinction makes a difference. Defendant was originally sentenced for drug-induced homicide and on remand he was again sentenced for drug-induced homicide. The only difference between the counts on which defendant was sentenced was the aggravating circumstance of delivering more than 10 objects of LSD. Defendant provides no explanation whatsoever for why the lack of that element of the offense renders the PSI deficient.

¶ 48     In addition, the trial judge that sentenced defendant on remand was the same judge who (1) presided over defendant's jury trial and (2) originally sentenced defendant. When resentencing defendant, the trial court remarked that defendant had shown some rehabilitative potential since his incarceration, which the court did not see in defendant previously. The court also noted that defendant seemed "less full of himself." Clearly, the court was familiar with defendant and the prior proceedings.

¶ 49     Moreover, defendant presented extensive testimony focused almost exclusively on how he had changed since his conviction. The trial court explicitly considered that testimony and directly contrasted it with the statements in the PSI. Indeed, defendant's strategy at sentencing appears to have been for him to (1) acknowledge his prior bad habits, conduct, and attitude and (2) use his actions while in prison to demonstrate his changed attitude, acceptance of responsibility, and rehabilitative potential. In short, defendant had the opportunity to and did

- 13 -

present all of the information he complains was missing from the PSI.

¶ 50     The appellate court has routinely held that a new PSI is not required on resentencing when (1) the trial judge was the same and familiar with the prior proceedings and (2) the defendant had the opportunity to present mitigating evidence from his time in prison. See *People v. Acevedo*, 216 Ill. App. 3d 195, 202-03, 576 N.E.2d 949, 954 (1991) (holding that the trial court did not commit error by failing to order a new PSI, especially because the trial court was familiar with the defendant's case from prior proceedings and gave the defendant an opportunity to present mitigating evidence); *People v. Brown*, 198 Ill. App. 3d 156, 159, 555 N.E.2d 794, 796 (1990) (concluding that the original PSI was sufficient because the same trial judge presided over resentencing and the second sentencing hearing took place 13 months after the original); *People v. Morton*, 102 Ill. App. 3d 280, 281, 430 N.E.2d 383, 384 (1981) (holding that a new PSI was discretionary, the same judge heard both proceedings, the second hearing occurred 11 months after the first, and both sides presented new evidence at the resentencing hearing). We agree with these decisions and conclude that the three-year gap between the date of the PSI and the resentencing is not a basis to distinguish them under these circumstances. See *Acevedo*, 216 Ill. App. 3d at 202-03.

¶ 51     Accordingly, we conclude that the trial court did not err by considering the original PSI (and not an updated one) at resentencing.

¶ 52     B. The Trial Court Properly Found No Applicable Statutory Factors in Mitigation

¶ 53     Alternatively, defendant argues that the trial court abused its discretion where it "failed to consider a statutory factor in mitigation and sentenced [defendant] to a lengthy sentence despite evidence warranting a much lesser sentence." Defendant acknowledges that he failed to preserve the error by objecting in the trial court but asks this court to review for plain error. We

conclude no error occurred.

¶ 54                                    1. *The Applicable Law*

¶ 55        The Illinois Supreme Court recently explained the plain-error doctrine in *People v.*

*Jackson*, 2020 IL 124112, ¶ 81, 162 N.E.3d 223, in which it wrote the following:

> "A reviewing court will consider unpreserved error when a clear or obvious error
>
> occurs and (1) the evidence is so closely balanced that the error alone threatened to
>
> tip the scales of justice against the defendant, regardless of the seriousness of the
>
> error, or (2) the error is so serious that it affected the fairness of the defendant's
>
> trial and challenged the integrity of the judicial process, regardless of the closeness
>
> of the evidence. [Citations.] When a defendant fails to establish plain error, the
>
> result is that his procedural default must be honored."

¶ 56        The first step in the plain-error analysis is generally to determine whether an error

occurred. *People v. Hood*, 2016 IL 118581, ¶ 18, 67 N.E.3d 213. If no error has occurred, a

defendant's plain-error claim cannot succeed. *Id.*

¶ 57                                         2. *This Case*

¶ 58        Defendant contends that the trial court should have found that he did not

"contemplate that his criminal conduct would cause or threaten serious physical harm to another"

as a statutory factor in mitigation. 730 ILCS 5/5-5-3.1(a)(2) (West 2018). Defendant notes that he

testified explicitly that he did not realize at the time that his selling LSD could result in someone's

death.

¶ 59        At sentencing, the trial court noted, "And the fact that the defendant has battled his

substance abuse issues—although I don't think he was battling very hard at the time ***. And he

inflicted the introduction of mind-altering substances onto other people. I think that's

- 15 -

aggravating." The court also noted that defendant did not do so "out of ignorance." As we discuss next, the trial court's inference that defendant must have been aware of the threat of harm by selling drugs was supported by the evidence at trial and sentencing.

¶ 60        Although defendant testified that he did not see the potential for harm at the time, defendant also stated that he now "absolutely" understood the dangers. The trial court was free to assess the credibility of defendant and disbelieve his statement that he only realized the danger in hindsight. At the hearing on the motion to reconsider sentence, the court stated, "the defendant introduced a very powerful substance to a bunch of young people at this underage drinking party." It strains credulity to suggest that defendant was unaware that LSD was a hallucinogenic drug at the time he was selling it, particularly because he had taken LSD at the very party at which he was selling it. The danger of giving such a drug to young persons at a party, with alcohol, located on the edge of a rural community is immediately apparent to adults, even those who have recently reached age 21.

¶ 61        We conclude that nothing in the record shows that the manner in which the trial court reached that sentence was in error.

¶ 62                    III. CONCLUSION

¶ 63        For the reasons stated, we affirm the trial court's judgment.

¶ 64        Affirmed.